Harry Byers v. Commissioner, Byers Transportation Company, Inc. v. Commissioner.Byers v. Commissioner, Byers Transp. Co.Docket Nos. 21793, 21794.United States Tax Court1951 Tax Ct. Memo LEXIS 308; 10 T.C.M. (CCH) 200; T.C.M. (RIA) 51063; March 2, 1951James J. Waters, Esq., 712 Commerce Bldg., Kansas City 6, Mo., and Les B. Parker, Esq., for the petitioners. George E. Gibson, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These proceedings, consolidated for hearing and opinion, involve deficiencies in income tax as follows: DeficiencyByers Trans.YearHarry ByersCo., Inc.1942$2,290.991943$ 4,308.913,552.20194410,171.306,245.6019456,155.912,651.5419467,874.758,118.60 Several adjustments were made in the petitioners' returns which are not here in controversy. The issues for our determination concern the tax liability for the alleged earnings of a partnership composed of the son and daughter*309 of petitioner, Harry Byers. Respondent has determined in his deficiency notices that the income of the partnership for the taxable years 1942 through 1946 should all be taxed, first, to Byers Transportation Company, Inc., and, secondarily, to its principal stockholder, Harry Byers, as dividends from that company. He relies upon these determinations here and contends, in the alternative, that the alleged partnership income is all taxable to petitioner, Harry Byers, as his individual earnings. Findings of Fact The Byers Transportation Company, Inc., hereinafter referred to as the corporation, is a Missouri corporation organized in 1934 and has its principal place of business in Kansas City, Missouri. During the period here involved it engaged in the general transportation business, hauling commodities by truck lines principally between its terminal in Kansas City and other points in Missouri. The corporation's tax returns were filed with the collector of internal revenue for the sixth district of Missouri. Harry Byers resides in Kansas City with his wife, Esther Byers, and four children, including a son Paul, born in 1924, and a daughter Constance, born in 1922. Byers filed his*310 income tax returns with the collector of internal revenue for the sixth district of Missouri. During the period from 1942 through 1946 all of the stock of the corporation was owned by the immediate members of the Byers family and a nephew, Simon Rubin. in the following percentages: 1-1-42 to12-23-44 to9-10-45 to12-23-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-31-46Harry Byers807060Esther Byers101010Simon Rubin101010Constance Byers1010Paul Byers10 Paul and Constance Byers received their stock in the corporation by gift from their father, Harry Byers. During the entire period before us Harry Byers was president of the corporation, his wife was vice-president, and Rubin was secretary-treasurer. Harry Byers has been president of and in complete control of the corporation at all times since its organization. He devotes his full time to it and receives substantially all of his income from it in salary, dividends, and rents. Gasoline was a large expense item in the operation of the corporation. Prior to September 1941 it purchased most of its gasoline from the Bailey Oil Company in Kansas City. The gasoline was purchased at wholesale and delivered*311 to the corporation's own storage tank and pump at its terminal in Kansas City. Some gasoline was purchased from other dealers in and out of Kansas City when need for it arose. In 1941 Harry Byers put into effect a plan which he had previously conceived of having Paul and Constance form a partnership to sell gasoline and automotive parts. Constance was then 18 years of age and a student at the University of Michigan, where she graduated in 1943. Paul was 16. He had just graduated from high school and was planning to enter the University of Missouri, which he did in the fall of 1941. He was a student there continuously until 1947, with the exception of military service from 1943 to 1945. An agreement of partnership between Paul and Constance was executed as of September 1, 1941, reciting that the parties had each contributed the sum of $500 toward the capital of the business and the partnership commenced business on that date as the P & C Company. A bank account was opened for the partnership in the Baltimore Bank of Kansas City. Paul and Harry Byers were both authorized to sign checks for the partnership. The account was handled in that manner until February 8, 1943, when the authorized*312 signatures were changed to Paul and Constance Byers. After that time checks on the account were drawn by Constance. Beginning September 1, 1941, the P & C Company purchased gasoline at wholesale from the Bailey Oil Company (later the Hi Lewis Oil Company) and resold it to the corporation at a mark-up of two cents a gallon above the wholesale price. From September 1941 until April 1943 the P & C Company had no location separate from that of the corporation. The gasoline purchased by the P & C Company and resold to the corporation was delivered directly to the corporation's storage tank at its terminal, where it was pumped into the corporation's vehicles by its own employees. During this period both Paul and Constance were attending college away from Kansas City. The P & C Company had no customers other than the corporation and had no full-time employees of its own. Its books were kept by the office manager and bookkeeper of the corporation in his spare time. A gasoline filling station was leased for the P & C Company in April 1943 at some distance from the corporation's terminal and George Morrison was employed to operate it. Morrison received all profits from the sale of automotive*313 supplies through the filling station, but did not receive any of the profits from gasoline sales. All proceeds on gasoline sales were deposited by Morrison to the credit of the P & C Company in the Baltimore Bank of Kansas City. Morrison operated the filling station from 1943 to 1946. During this period some gasoline was sold to other customers, but most of the sales were to the corporation. Some of the gasoline sold to the corporation was delivered directly to the corporation's terminal storage tank and pump, but after April 1943 most of it was sold to the corporation at the partnership's filling station. The P & C Company's gasoline sales during the entire period here involved were as follows: Sales19421943194419451946Byers Transportation Co., Inc.$36,714.92$58,572.62$72,807.88$69,970.85$78,844.30Others9,787.5719,009.5920,814.2214,699.81$36,714.92$68,360.19$91,817.47$90,785.07$93,544.11Constance wrote the checks for the P & C Company and also signed other documents for it when they were sent to her at Ann Arbor, Michigan, where she was attending college, but otherwise had little to do with the operation*314 of the business until she returned to Kansas City in 1943. After that time she supervised the bookkeeping for the business and did some of it herself. She was employed full time by Katz Drug Company in Kansas City during a portion or all of 1944 and 1945, reporting income from such employment of $1,218.64 in 1944 and $1,045.65 in 1945. Paul was away at school or in military service during the entire period from 1942 through 1947. Each partner had a capital account on the partnership books, showing the share of undrawn profits. Withdrawals by the partners from partnership funds during the years 1942 through 1946 were as follows: ConstanceYearByersPaul Byers1942$1,200.00$1,500.0019433,805.772,007.5919443,499.654,394.9019454,520.151,794.9019462,493.206,105.08There were no partners in the P & C Company except Paul and Constance during the period 1942 through 1946. No part of the funds of the P & C Company was used to defray the personal expenses of the partners or was used in the support of the Byers family. Harry Byers had no authority to write checks on the partnership checking accounts after 1943, and did not do so. He continued*315 to support his family, as he had in the past, including Paul and Constance. Partnership income tax returns were filed for the P & C Company and individual income tax returns were filed for Paul and Constance in each of the years 1942 through 1946. The respondent has determined in his notice of deficiency that the P & C Company was not a valid partnership for tax purposes and that its income was the income of the corporation for each of these years. He also determined that the drawings of Paul and Constance were in reality dividends to Harry Byers from the corporation for each of those years. Opinion LEMIRE, Judge: Respondent's action in taxing the income of the P & C Company to the corporation is based upon his determination that the P & C Company was not formed for any business purpose, that Paul and Constance Byers contributed nothing to it in the way of either capital or services, and that it was formed solely for the purpose of saving taxes. The petitioners argue that the P & C Company was a bona fide partnership operating independently of the corporation and that its income belonged in equal shares to Constance and Paul Byers, the only partners. The question whether the*316 partnership was real for income tax purposes depends upon whether, considering all of the facts, "the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both." Commissioner v. Culbertson, 337 U.S. 733. As for the partners themselves, we can not find on the evidence that at the time the partnership was formed they had any intentions or purposes whatever in the matter. Apparently, they took no part in the transaction except to sign the partnership agreement which their father had prepared for them. When asked by counsel what was their understanding of how the business was to be carried on, Constance testified: "* * * at that time I think that I was away at school when the complete plans were formulated and I don't really recall. * * * I knew that we were looking for a station and we wanted to get a filling station, but I had to leave for school and I don't remember exactly what happened." She did not recall whether the partnership had any employees in 1942. There is evidence, however, that it had no regular employees until some time in 1943. Petitioner, Harry Byers, was equally vague*317 about the circumstances surrounding the creation of the partnership. When asked by his counsel to tell the Court about the P & C Company, he testified that: "In 1941, looking ahead and planning, I conceived an idea that we might - an idea of trying to help my children for the future and in that way, after conversing with them, the P & C Company was originated." He further testified that the idea had been formulated in his mind for some time prior to 1941 and that: "* * * As an individual I have always tried to promote the welfare of my family and from time to time I have always thought about them." While the partnership agreement recites that the parties were contributing $500 each as partnership capital, there is no evidence that this capital, or any other, was ever paid in or that the partnership ever required any paid-in capital. On a whole, the evidence leaves little doubt in our minds that the formation of the partnership was conceived and carried out by petitioner, Harry Byers, with little more than acquiescence on the part of Constance and Paul, and that it was his intention in the matter rather than theirs that must be considered. We have no way of determining just*318 what took place in his mind, but judging, as we must, from the attending circumstances, it was undoubtedly his intention to use the partnership as a means of diverting a part of the company's income, before taxes, to the members of his immediate family. There can be no other explanation of the arrangement whereby the corporation nominally paid the partnership two cents per gallon more for gasoline than it had been paying and could have continued paying for it. Actually, the evidence indicates that this so-called purchase of gasoline from the partnership was nothing more than bookkeeping entries. The same distributor continued to deliver the gasoline to the corporation's tank located at its terminal at the same price, and the corporation's employees continued to handle it just as they had been doing. The only difference was that the gasoline was billed to the P & C Company and then charged to the corporation at a mark-up of the retailer's commission of two cents per gallon. The partnership's records and bookkeeping entries were all made by the corporation's bookkeeper. These conditions continued until about April 1943 when a lease was acquired in the name of the partnership, or the*319 partners, on the filling station located at 1433 Broadway. It was then that the partnership first began to sell gasoline to customers other than the corporation. However, the corporation continued to be the partnership's principal customer and some of this gasoline was delivered to the corporation's tank throughout the taxable years. We think that the alleged sales of gasoline by the partnership to the corporation were fictitious and had no effect on the true income of either the partnership or the corporation. The profits attributable to these sales were in no sense earnings of the partnership. If profits at all, they were the profits of the corporation which its stockholders gratuitously permitted to be diverted to the partnership. They must, we think, be restored to and taxed to the corporation. With respect to those transactions between the partnership and the corporation, the facts are much like these in R. O. H. Hill, Inc., 9 T.C. 153, where we hold that the respondent properly disregrded an alleged partnership formed between two principal stockholders of a corporation for no other purpose than to siphon off a portion of the corporation's income. All of the*320 income attributed to the partnership, however, did not result from the sales of gasoline to the corporation. After acquiring the lease on the Broadway filling station the partnership began selling gasoline to the general public. The operation of the business was turned over to a full-time employee who had no connection with the corporation. In 1945 the sales to the public were approximately $20,800 against approximately $70,000 of sales to the corporation. We think that the profits from these sales to the public were not the corporation's earnings and can not be taxed to the corporation, or to Harry Byers, as distributions made to him by the corporation. Whether the partnership was a valid partnership from the beginning or whether it became such when and to the extent that it dealt with the public, or whether it was ever a valid partnership, we do not need to determine in these proceedings. It is enough to say that the income from the sales to the public was not the income of the corporation and that it is, therefore, not taxable to the corporation or to Harry Byers as distributions from the corporation. The respondent contends, in the alternative, that all of the alleged partnership*321 earnings are taxable to Harry Byers as his individual income. Our ruling that the profits on the sales to the corporation were the income of the corporation disposes of that contention only in respect of these profits. However, we do not think that any of the partnership's profits are taxable to Harry Byers as his individual earnings. He personally performed no services in connection with the sales of gasoline to the public and he contributed no capital to the business. The sales to the public occurred after the partnership had begun doing business in its own location some distance from the corporation's place of business. From that date on, the partnership was operated by a full-time partnership employee who had no connection with the corporation or Harry Byers. Respondent determined in his notice of deficiency to Harry Byers that the so-called partnership income was taxable to him under section 22(a), Internal Revenue Code. He states in his brief that: "Respondent did not err, therefore, in not recognizing the partnership for tax purposes and in including its income in the income of the corporation. From a holding that the income in question was actually*322 the corporation's income, it would follow that the amounts drawn for the use of Paul and Constance prior to the time they became stockholders in the corporation should be taxed as dividends to their father, Harry Byers, who was the principal stockholder of the corporation and who was responsible for their support and maintenance." R. O. H. Hill, Inc., supra [9 T.C. 153]; Forcum-James Co., supra [7 T.C. 1195]. Our ruling as to the profits on the sale of gasoline to the public partially disposes of this issue. The corporation, of course, could not have distributed as dividends income which it never received. We agree with the respondent that to whatever extent the earnings attributed to the corporation were withdrawn by Constance and Paul they must be treated as distributions from the corporation to its stockholders. However, we think that the respondent was in error in taxing all of these distributions to Harry Byers. He owned only 80 per cent of the stock of the corporation up to December 23, 1944, 70 per cent from then to September 10, 1945, and 60 per cent from then until December 31, 1946. The other stockholders were members of his immediate family. There is*323 no evidence whatever, nor has the respondent determined, that Harry Byers personally intended to make these gifts to Constance and Paul, independently of the other stockholders. That presumption, on which the respondent apparently relies, is no stronger than the presumption that all of the stockholders participated in, or acquiesced in, the distributions. Our holding is that Harry Byers, who is the only stockholder before us in these proceedings, is taxable only on that portion of the withdrawals from the corporation which is allocable, percentagewise, to his stockholdings in the corporation when the withdrawals were made. Decisions will be entered under Rule 50.